UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| TIM DICKERSON, | ) | |
| | ) | |
| Petitioner, | ) | No. 3:08-0649 |
| | ) | (Crim. Case No. 3:06-00031) |
| v. | ) | Judge Echols |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM

Pending before the Court is Petitioner Tim Dickerson's "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by Person in Federal Custody" (Docket Entry No. 1). Responding in opposition to that Motion, the Government has filed a Motion to Dismiss (Docket Entry No. 12).

## I. BACKGROUND

On March 8, 2006, Petitioner and eighteen others were charged by way of Indictment with conspiring to distribute 5 kilograms or more of cocaine and 50 grams or more of cocaine base. On April 5, 2006, a seventeen-count Superseding Indictment was returned against those individuals and others.

Petitioner was named in Counts One and Nine of the Superseding Indictment. Count One charged that beginning sometime in 2005 and continuing thereafter through March 2006, Petitioner and others conspired to possess with intent to distribute 5 kilograms or more of cocaine and 50 grams or more of cocaine base in violation of 21 U.S.C. § 846. Count Nine of the Indictment charged that on December 20, 2005, Petitioner, Saul Aguirre, Vincente Aguirre, and Kenneth Jones

1

possessed with intent to distribute and did distribute 500 grams or more of cocaine, in violation of Titles 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

Petitioner was arrested on May 31, 2006. Shortly after his arrest, Petitioner provided the United States with a proffer statement in which he admitted his involvement in the underlying conspiracy and in particular his relationship with Kenneth Jones, a Nashville-based member of the conspiracy who distributed kilogram quantities of cocaine.

On July 9, 2007, Petitioner entered a plea of guilty to Count Nine of the Superseding Indictment pursuant to a "Petition to Enter A Guilty Plea" ("Petition") and a written Plea Agreement ("PA"). Under both the Petition and PA, Petitioner agreed to plead guilty to Count Nine which had a mandatory statutory minimum of five years imprisonment and a maximum penalty of forty years imprisonment. The parties did not reach any agreement as to Petitioner's anticipated criminal history category under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"), although they did note Petitioner's sentence could be enhanced because he committed the violation after having previously been convicted of a different felony drug offense. The parties also agreed that Petitioner's anticipated total offense level was 25.

In exchange for the guilty plea, the Government agreed to dismiss Count One as to Petitioner. The Government also agreed that Petitioner was entitled to a three-level reduction in his Guideline range because he accepted responsibility for his actions. The Government further agreed to recommend Petitioner be sentenced within the Guidelines and agreed not to file an information under 21 U.S.C. § 841(b)(1)(B) which would have increased the statutory mandatory minimum to ten years based upon Petitioner's prior felony drug offenses. The Government also agreed not to charge Petitioner with any other crime in relation to his involvement in the drug conspiracy in the

Middle District of Tennessee in 2005 and 2006. The Court thereafter accepted Petitioner's plea of guilty to Count Nine.

On October 26, 2007, Petitioner was sentenced to a term of 84 months imprisonment, to be followed by a four-year term of supervised release. That sentence was at the low end of the Guideline range for offenders (such as Petitioner) with a total offense level 25 and a criminal history category IV.

Petitioner did not appeal his conviction or sentence. The present Motion was filed on June 26, 2008.

## II. **STANDARD OF REVIEW**

To prevail on a § 2255 motion, the Petitioner must establish either an error of constitutional magnitude that had a substantial and injurious effect or influence on his criminal proceeding, see Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993), or the record must reflect a fundamental defect in the proceedings that inherently resulted in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure. Reed v. Farley, 512 U.S. 339, 348 (1994); United States v. Todaro, 982 F.2d 1025, 1028 (6th Cir. 1993). Claims of error must be raised in the trial court and on direct appeal or such claims are procedurally defaulted. See Phillip v. United States, 229 F.3d 550, 552 (6th Cir. 2000).

Under Rule 8 of the Rules Governing Section 2255 Proceedings, the Court "must review the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted." Petitioner is not entitled to an evidentiary hearing if the § 2255 motion and the record of the case conclusively show that he is not entitled to relief. See Green v. United States, 65 F.3d 546, 548 (6th Cir. 1995). Finally, when the

3

trial judge also hears the collateral proceedings, the judge may rely on his recollections of the prior proceedings in ruling on the collateral attack. Blanton v. United States, 94 F.3d 227, 235 (6th Cir. 1996).

### III. ANALYSIS

Petitioner's sole claim relates to the alleged ineffective assistance of counsel in failing to move for a mitigating role reduction under U.S.S.G. § 3B1.2. Petitioner claims counsel should have moved for a reduction in sentence based upon the following: Petitioner had no knowledge of the overall scheme or plan of his co-defendant Jones; Petitioner had no knowledge of what the money he gathered was to be used for; Petitioner did not participate in the purchase of two kilograms of cocaine; Petitioner did not have a hand in the packaging of cocaine; Petitioner was not present during the acquisition of two kilograms of cocaine and did not know where they were purchased; Petitioner did not own the premises where the drugs were purchased; and Petitioner's involvement was a one-time money transaction. Petitioner also claims he should have received a reduced sentence because his lack of education led him to being coerced by his co-defendants into committing the crime and a co-defendant, Kim Williams, received a minor role reduction. Petitioner also claims his sentence should have been reduced because he was depressed over filing for bankruptcy, his three-year old's medical condition, and his mother's permanent disability and blindness in one eye.

To establish ineffective assistance of counsel, Petitioner must show that his counsel's performance was deficient and that the deficiency prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687 (1984); Evitts v. Lucey, 469 U.S. 387, 396 (1985). Petitioner must show that counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth

4

Amendment, and that there is a reasonable probability that the lawyer's errors prejudiced the outcome of the proceedings against him. Strickland, 466 U.S. at 687; Arredondo v. United States, 178 F.3d 778, 782 (6th Cir. 1999). In the context of a guilty plea, this means that a Petitioner must show "prejudice by demonstrating a reasonable probability that, but for counsel's errors, [the Petitioner] would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

A reasonable probability is one sufficient to undermine confidence in the outcome; it is a less demanding standard than "more likely than not." Strickland, 466 U.S. at 697. A court need not address both parts of the Strickland test if the petitioner makes an insufficient showing on one. Id.

As indicated, Petitioner claims counsel was ineffective in failing to move for a reduction because Petitioner was either a minor or minimal participant in the offense under U.S.S.G. § 3B1.2. He asserts counsel failed to make such a motion, even though Petitioner urged him to do so. Petitioner also claims that counsel told him such a motion was not proper because the conspiracy charge was dismissed as to Petitioner.

Petitioner's assertion that he told counsel to move for a reduction but counsel refused to do so is undermined by his Petition, the PA, and the change of plea colloquy with the Court. In his Petition to plead guilty, Petitioner acknowledged having a sufficient opportunity to discuss with counsel all the facts and surrounding circumstances concerning the matters contained in the Superseding Indictment, that counsel advised him as to the nature and cause of every accusation against him, that his lawyer explained to him all elements of the crimes charged and what would have to be proved, and that counsel thoroughly discussed all of the potential defenses to the crime charged. (Docket Entry No. 12-6, Petition ¶ 4). More pointedly, in his petition to enter a guilty

5

plea, Petitioner acknowledged the following: "My lawyer has done all that anyone could do to counsel and assist me, and I understand the proceedings in this case against me. My lawyer has done all the investigation and research in this case that I have asked her/him to do and I am satisfied with his representation at this point." (Id. ¶ 10).

Likewise, in his PA, Petitioner stated that his counsel had fully explained the case to him and that Petitioner fully understood the allegations and willfully and voluntarily agreed to all the terms of the PA. (Id. PA ¶¶ 2, 28). Nevertheless, he now claims that his actual total offense level should have been 22 or 23 (as adjusted for his minor or minimal role), even though he agreed in the PA that the proper total offense level was 25. (Id. PA ¶ 12(c)). Moreover, while the PA contains numerous agreements as to Petitioner's sentence (such as a reduction for acceptance of responsibility and the Government's agreement to forego filing a motion for enhancement which would have doubled the mandatory minimum sentence) there is no suggestion anywhere in the PA that Petitioner's role in the offense was minor or that he was a minimal participant and therefore entitled to a reduction under U.S.S.G. § 3B1.2

Further, during the change of plea hearing, the Court thoroughly reviewed with Petitioner his constitutional rights, the maximum penalties provided by law, the nature and terms of the plea agreement, and the consequences of the plea agreement for the Petitioner. The Court then made specific inquiry as to whether he was satisfied with his legal representation and whether he understood that the anticipated offense level would be 25. Petitioner responded in the affirmative to both inquiries.

A plea colloquy is a solemn event and "dispositions by guilty pleas are accorded a great measure of finality." Blackledge v. Allison, 431 U.S. 63, 71 (1977). Because courts must be able

6

to rely on a defendant's statements during a plea colloquy, "allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" United States v. McMaster, 403 F.3d 216, 221 (4th Cir. 2005)(collecting cases).

Here, Petitioner, under oath, informed the Court that his plea was voluntary, he understood the terms of the agreement, and he discussed the terms of his plea with counsel. There was no suggestion that Petitioner was entitled to any sort of role reduction for his minimal or minor participation in the crimes at issue or any suggestion made by Petitioner that counsel failed to so something which he asked. Quite the contrary, the PA itself established an anticipated offense level of 25 and Petitioner assured the Court (under oath and on the record) that he agreed with that calculation.

Regardless of what Petitioner agreed to in his Petition, the PA and at the plea colloquy, Petitioner cannot prevail on his ineffective assistance of counsel claim because he cannot show prejudice within the meaning of Strickland by virtue of counsel's failure to request a minor or minimal role reduction. Section 3B1.2 of the Sentencing Guidelines allows for a four-level reduction if a defendant is a minimal participant in any criminal activity and a two-level reduction if a defendant is a minor participant in the criminal activity.[1] According to the application notes, a reduction for minimal participation is to be used infrequently and "is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group." U.S.S.G. § 3B1.2, Application Note 4 (2006). A minor participant is one who is less culpable than most other

---

[1] Where a defendant's role falls between that of a minimal participant and that of a minor participant, the Guidelines provide for a three-level reduction.

7

participants, but who nevertheless could not be described as a minimal participant. The determination of whether an offender is entitled to either a reduction for his or her minor or minimal role is fact specific and "the court, in weighing the totality of the circumstances, is not required to find, based solely on the defendant's bare assertion, that such a role adjustment is warranted." Id., Application Note 3(C).

Petitioner's present claims that he lacked knowledge of the overall scheme or plan of co-defendant Jones; that he lacked knowledge of what the money he gathered was for; and that he did not participate in the purchase of two kilograms of cocaine, are directly contradicted by his guilty plea and his proffer to the United States. Petitioner's PA contains a statement of facts which Petitioner admitted was true. That statement indicates that on December 20, 2005, Petitioner and others knowingly possessed with intent to distribute and did in fact distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine. The statement also indicates that the case arose as a result of an investigation into organized drug trafficking in and around the Inman Court Public Housing Project in Lebanon, Tennessee and that Jones was a kilogram supplier of cocaine to the Housing Project. Petitioner specifically admitted that he "assisted Jones in his narcotics trafficking activities." (PA ¶ 10). In relation to the December 20, 2005 transaction, Petitioner admitted that he collected money intended to be used to purchase two kilograms of cocaine and that he gave the money to Jones and that thereafter Jones met with Saul Aguirre to exchange the money for drugs.

Petitioner's present suggestion that he was some sort of bit player in the cocaine conspiracy who had no knowledge of its scope is also refuted by his proffer to the United States. That proffer was given to Lance Hampton ("Hampton"), a Task Force Officer with the Drug Enforcement

8

Administration.[2] According to an affidavit submitted by Hampton in this case, Petitioner admitted the following during the proffer session:

> Dickerson spoke with Montez Adams approximately three to four weeks prior to June 7, 2006, by phone. Adams told Dickerson to be careful because the federal police were looking for him. Dickerson told Adams that he knew the police were looking for him, but he was not going to turn himself over to the police.
> Dickerson stated he was friends with Kenneth Jones and Adams was looking for an alternate source of supply for cocaine. Dickerson stated he brokered the cocaine transaction between Jones and Adams. Dickerson stated Adams was to pay him $500.00 per kilogram for being in [sic] the contact person, and that this agreement began in June 2005. According to Dickerson, the first cocaine deal was for one kilogram and the "ticket" (price of the cocaine) was $21,000.00 to $21,500.00. Dickerson met Jones at Jones's mother's house in Nashville, TN to pick up the cocaine. Dickerson stated that Jones sold Adams one to two kilograms per week for one to two months. Dickerson stated that numerous cocaine deals were conducted at Jones' cousin's residence in Nashville between Jones, Adams, and some Hispanic individuals.
> Dickerson also stated that on December 20, 2005, he met Jones at the Post Office next to the Dupont in Old Hickory, TN. Jones gave Dickerson two kilograms of cocaine, which was in a blue grocery sack. Dickerson stated Jones was to pay him $1000.00 for the delivery of the cocaine. Dickerson took the cocaine to his mother's residence in Lebanon, TN. At this location Dickerson met with Lamont Hastings, the purchaser of the cocaine. Jones had instructed Dickerson to count the money Hastings provided for the purchase because Hastings always shorted Jones his money. Dickerson stated he counted the money in $1000.00 stacks, but he did not count every dollar. Dickerson stated Hastings shorted him $2000.00, and as a result Jones refused to pay Dickerson. Dickerson stated he stopped brokering deals on that day because he did not get paid.
> Dickerson further stated that he had been to a particular location in Lebanon, TN on several occasions. Dickerson stated this location was where Adams kept all his cocaine. Dickerson stated Adams would "cook" 4 ½ ounces of crack at a time, and would do so one to two times per week. Dickerson also stated that Kim Williams had been present when Adams cooked crack.
> Dickerson stated that [he] also brokered cocaine deals between Adams and a Gary Jackson in the Spring of 2005. Dickerson stated he purchased two kilograms of cocaine approximately two or three times for $19,000.00 per kilogram from Jackson, which would then go to Adams.

---

[2]Also present at the proffer was Petitioner's then-counsel, Buford Bates and Tom Kent, an Assistant United States Attorney.

9

(Docket Entry No. 12-6). Given these statements which were made in then-defense counsel's presence, there is little wonder why no request was made for a reduction in sentence based upon Petitioner's alleged role as a minor or minimal participant.

Moreover, Petitioner's contentions that he was not present during the acquisition of the two kilograms of cocaine, that he did not own the premises where the drugs were purchased, and that he did not package the cocaine are simply irrelevant to his sentence. Petitioner admitted collecting money intended to be used to purchase two kilograms of cocaine. He was sentenced on that basis and not sentenced based upon the entire amount of cocaine which exchanged hands during the course of the conspiracy. See, United States v. Walsh, 97 F.3d 142, 152 (6th Cir. 1996)(reduction in sentence for minor participation "particularly inappropriate in light of the fact that the full amount of drugs possessed by others in the conspiracy were not attributed to [defendant] even though such drugs were arguably within his knowledge and foreseeable to him"). In this regard, the fact that Defendant Kim Williams, who was Adam's girlfriend and played a minor role in the offense, received a lesser sentence is not pertinent. The Government filed a Motion for Downward Departure under U.S.S.G § 5K1.1 based upon Williams' limited role and the fact that she provided a timely and detailed account of the narcotics trafficking activity of others involved in the conspiracy which was instrumental in the prosecution of this case. Further, Williams had no prior criminal record and was entitled to the safety valve provision found in 18 U.S.C. § 3553(f).

Finally, Petitioner's limited schooling and claimed depression cannot serve as a basis for a mitigating role reduction under U.S.S.G. § 3B1.2. In any event, U.S.S.G. § 5H1.2 provides that education and vocational skills are not ordinarily relevant in determining whether a departure is warranted. Likewise, U.S.S.G. §5H1.3 provides that mental and emotional conditions are not

10

ordinarily relevant in determining whether a departure is warranted. Petitioner has not set forth any basis to establish a departure on any of these bases. Furthermore, the Court was aware of Petitioner's educational background, his bankruptcy, and the health condition of his mother and daughter by virtue of the Presentence Report and counsel was not ineffective in failing to bring to the Court's attention something which the Court already knew.

## IV. CONCLUSION

On the basis of the foregoing, Petitioner's "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by Person in Federal Custody" (Docket Entry No. 1) will be denied. The case will be dismissed with prejudice. No certificate of appealability will issue because Petitioner cannot demonstrate that reasonable jurists would find debatable or wrong this Court's conclusion that counsel was not ineffective in failing to move for a reduction in sentence under U.S.S.G. § 3B1.2. See Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE